AO 91 (Rev. 11/11)   Criminal Complaint

**Sealed**
Public and unofficial staff access to this instrument are prohibited by court order

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
**FILED**
*May 14, 2025*
Nathan Ochsner, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| LAVAR WILLIAMS | ) | **4:25-mj-296** |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  4/02/2025 and 4/09/2025  in the county of  Harris  in the Southern District of  Texas , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C. 841(a)(1), 841(b)(1)(A)(ii), and 846 | Attempt to Possess with Intent to Distribute a Controlled Substance. |
| Title 18, U.S.C. 924(c)(1)(A)(i) and 2 | Possession of a Firearm in Furtherance of a Drug Trafficking Crime. |

This criminal complaint is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

*/s/*
*Complainant's signature*

Joseph Stevens, FBI Special Agent
*Printed name and title*

Sworn to before me and signed by telephone.

Date: May 14, 2025

*Judge's signature*

City and state:  Houston, Texas    Richard W. Bennett, U.S. Magistrate Judge
*Printed name and title*

Sealed
Public and unofficial staff access to this instrument are prohibited by court order

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

4:25-mj-296

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Joseph Stevens, being duly sworn, do hereby depose and state:

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been since January 2020. I have been assigned investigative responsibility in the areas of violent crimes in the Houston Division of the FBI. Prior to that, I investigated financial crimes and public corruption in the Columbia Division of the FBI. Through the FBI, I have received extensive training related to the investigation of federal crimes to include violent crimes. I have also received formal education and training in the concepts of probable cause, reasonableness for searches and seizures, and participated in numerous aspects of firearm and drug investigations.

2. I am making this affidavit in support of a criminal complaint to be presented to the United States District Court for the Southern District of Texas in the matter of United States v. LAVAR WILLIAMS.

3. The facts in support of this affidavit and contained in the following paragraphs are the result of a joint investigation between the FBI, Department of Public Safety ("DPS"), and Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") into investigating the Money Blass Gang ("MBG"). MBG has been identified in carrying out various acts of violence, including home invasions, heisting cars, armed robberies, and drug and weapons trafficking, within the Houston area. Since February 2025, the investigative team has conducted drug and weapons-based operations, a drug escort operation, and a staged sting operation involving MBG.

4. LAVAR WILLIAMS (WILLIAMS) has been identified through these operations to be a member of MGB. This affidavit is being submitted in support of a criminal complaint

charging WILLIAMS with drug trafficking and attempt and conspiracy, in violation of Title 21 United States Code, Sections 841 and 846 and possession of a firearm in furtherance of a drug trafficking crime in violation of Title 18 United States Code, Section 924.

5. This complaint charges that on or about April 2, 2025, in the Southern District of Texas, LAVAR WILLIAMS, did knowingly and intentionally attempt to possess with the intent to distribute at least five kilograms of a mixture and substance containing a detectable amount of cocaine, its salts, optical and geometric isomers and salt of isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii).

6. This complaint charges that on or about April 2, 2025, in the Southern District of Texas, LAVAR WILLIAMS, did knowingly possess at least one firearm in furtherance of a drug trafficking crime for which each may be prosecuted in a court of the United States, namely knowingly and intentionally conspiring to and attempting to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. Sections 846(a)(1) and 846, all in violation of 18 United States Code Sections 924(c)(1)(A)(i) and 2.

7. This complaint charges that on or about April 9, 2025, in the Southern District of Texas, LAVAR WILLIAMS, did knowingly and intentionally attempt to possess with the intent to distribute at least five kilograms of a mixture and substance containing a detectable amount of cocaine, its salts, optical and geometric isomers and salt of isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii).

8. This complaint charges that on or about April 9, 2025, in the Southern District of Texas, LAVAR WILLIAMS, did knowingly possess at least one firearm in furtherance of a drug trafficking crime for which each may be prosecuted in a court of the United States, namely knowingly and intentionally conspiring to and attempting to possess with intent to distribute a

controlled substance, in violation of 21 U.S.C. Sections 841(a)(1) and 846, all in violation of 18 United States Code Sections 924(c)(1)(A)(i) and 2.

9. Due to the limited purpose of this affidavit, your Affiant has not included each and every fact known concerning this investigation, although your Affiant has not omitted any material fact that undermines the statements and conclusions herein. Your Affiant has set forth only the facts your Affiant believes are necessary to establish probable cause to show that LAVAR WILLIAMS violated Title 21 United States Code, Sections 841 and 846 and Title 18 United States Code, Section 924.

## PROBABLE CAUSE

10. On or about February 25, 2025, the FBI, DPS, and ATF began investigating Money Blass Gang ("MBG"). Investigators utilized an FBI Confidential Human Source ("CHS") to conduct numerous drug and firearm purchases at 5910 Easter Street, Houston, Texas 77088, a location provided to the CHS by MBG.

11. During these drug and firearm purchases, investigators were able to identify 5910 Easter Street, Houston, Texas 77088 as MBG's "trap house." A" trap house" is a location where illegal drugs are brought in, sold, and used. The property is the estate of Henry Williams, deceased, whom LAVAR WILLIAMS (WILLIAMS) is related to. WILLIAMS has also been present at the "trap house" during most of these purchases.

12. In order to help identify other members of MBG, FBI Agents directed the CHS to inform MBG of a drug escort opportunity that needed security due to rival gangs stealing the drugs.

13. On or about April 2, 2025, FBI conducted surveillance on MBG members. At approximately 3:55 pm, a silver Toyota RAV4 bearing Texas license plate WJV9736 arrived at a Best Western Hotel located in Houston, Texas. Four black males were observed exiting the vehicle

and meeting with the CHS in the Best Western Hotel's parking lot. A few minutes later, a white Ford F-150 bearing Texas license plate 7605N82 arrived at the Best Western Hotel and parked next to the CHS's vehicle. The white Ford F-150 is registered to WILLIAMS. WILLIAMS and another black male exited the vehicle and met with the rest of the group. At approximately 4:00 pm, WILLIAMS and five black males entered the Best Western Hotel with the CHS and entered room #325. FBI had hotel room #325 consensually monitored for audio and video with the CHS. While inside the room, the CHS explained to WILLIAMS and the five black males that they were to provide a vehicle security escort for a "drug vehicle" which contained a load of 40 kilograms of cocaine through a black Colombian territory, a route that was at risk for the drug load to be stolen.

14. The CHS asked everyone in the room if they were carrying firearms. WILLIAMS stated his firearm was in his vehicle outside in the parking lot.

15. The CHS paid a total of $2,500 to the individuals inside the hotel room, $500 per person for the drug escort. Photographed below from left to right is LAVAR WILLIAMS (in blue shorts, white shirt), Carlton Deray Scott II (middle), and Marquiez Rhem (right).



16. At approximately 4:14 pm, the CHS, WILLIAMS, and the other black males departed the Best Western Hotel room and exited the hotel. The CHS pointed out which vehicle

was the "drug vehicle" that they would be escorting. The "drug vehicle" was being driven by a second FBI CHS. Photographed below is WILLIAMS' Ford F-150 and the Toyota RAV4 departing the hotel parking lot to begin the drug escort.



17. FBI, ATF, and DPS agents had surveillance of the entire escort route and observed both target escort vehicles, the Ford F-150 and the Toyota RAV4, stay in tandem with the "drug vehicle" the entire route. Once the "drug vehicle" reached its destination, both target escort vehicles pulled into a 7-Eleven gas station at 4011 Highway 6 North, Houston, Texas 77084 along with the CHS, while the "drug vehicle" continued to drive past. While at the 7-Eleven, an MBG member asked the CHS about the possibility of robbing the individual that was transporting the drugs and stated that 40 bricks would change his life.

18. On or about April 7, 2025, under the direction of FBI Agents, the CHS told MBG members there would be a Mexican cartel stash-house containing 96 kilograms of cocaine that

MBG members could rob on April 9, 2025. MBG members stated to CHS they would be ready on April 9, 2025, to rob the believed cartel stash-house.

19. On or about April 9, 2025, FBI conducted a sting operation on MBG members. This operation utilized an abandoned golf course pump house located in Houston, Texas that was staged as a cartel's stash-house, which was being audio and video monitored by the FBI.

20. At approximately 2:12 pm, two silver Toyota RAV4s arrived at a Residence Inn Hotel parking lot in Houston, Texas. WILLIAMS and four black males exited the two silver Toyota RAV4s and met with the CHS in the Residence Inn Hotel parking lot.

21. At approximately 2:13 pm, the CHS, WILLIAMS, and the four black males entered Residence Inn Hotel room #226. FBI had hotel room #226 consensually monitored for audio and video with the CHS. While inside the room, the CHS told WILLIAMS and the four black males to follow the CHS to the location of the cartel stash-house. The CHS would open the gate for WILLIAMS and the other MBG members to enter the property and rob the cartel stash house of the 96 kilograms of cocaine. Photographed below is WILLIAMS inside hotel room #226.



22. At approximately 2:15pm, the CHS, WILLIAMS, and the other MBG members departed the Residence Inn Hotel and drove to the abandoned golf course. FBI maintained

surveillance on the CHS and both silver Toyota RAV4 target vehicles during the operation. Once the CHS and both target vehicles arrived at the abandoned golf course, the CHS got out of their vehicle and opened the gate to let the target vehicles onto the property. Once both target vehicles drove onto the property, the CHS closed the gate and stayed outside the property.

23. Once inside the gated property, video and audio monitoring observed WILLIAMS and four black males approach the abandoned pump house brandishing firearms. At approximately 2:31 pm, WILLIAMS entered the building brandishing a firearm. The other MBG members entered onto the property while also brandishing firearms with the anticipation of robbing cartel members of 96 kilograms of cocaine. When WILLIAMS and the other MBG members entered the pump house, they did not find any cartel members present, as they expected to find. There were several items on scene that were taken by MBG members to include $99 in government funds and a staged money counter.



24. WILLIAMS and the other MBG members ran back to the Toyota RAV4s with the stolen items and departed the abandoned golf course property. The CHS and the two target vehicles

went separate ways. This concluded the sting operation, which demonstrated WILLIAMS and other MBG members were willing to commit crimes of violence.

25.   Investigators utilized the photographs taken of WILLIAMS during the operations to compare with his official government photograph. These photographs appeared to be the same person. The Ford F-150 that WILLIAMS drove to the drug escort operation is also registered to WILLIAMS. CHS reporting and social media records were also obtained on WILLIAMS.

## CONCLUSION

26.   Based on the above information, I believe that probable cause exists that LAVAR WILLIAMS committed the following offenses: attempted possession of five kilograms or more of a mixture or substance containing a detectable amount of cocaine with the intent to distribute, in violation of Title 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846; and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

_____
Special Agent Joseph Stevens
Federal Bureau of Investigation

SUBSCRIBED AND SWORN TO me telephonically on this the 14th day of May 2025, and I find probable cause.

_____
The Honorable Richard W. Bennett
United States Magistrate Judge
Southern District of Texas